THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN FODALE, PLAINTIFF IN ERROR.

Argued October 1, 1935—Decided February 14, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and DONGES.

For the defendant in error, *William A. W. Grier*.

For the plaintiff in error, *Newcorn & Newcorn* (*William Newcorn*, of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. Plaintiff in error stands convicted of robbery at the Quarter Sessions Court of Salem county and brings this writ of error.

There are twenty-eight reasons for reversal filed. These, as counsel for the plaintiff in error concedes, simmer down to three main points, viz., (a) that it was error to have rejected motion to acquit at the end of the state's case; (b) that it was error to have denied motion to acquit at the end of the entire case; (c) that plaintiff in error suffered manifest wrong and injury by the conviction.

As to the facts, it appears that on the morning of February 2d, 1934, Harold Anderson and William Waddington, employes of the Pennsgrove National Bank, called at the post office in Pennsgrove and there received three bags con-

taining $130,000 in currency which had been sent by the Federal Reserve Bank to the Pennsgrove National Bank to be used for the payroll account of the DuPont Company. Anderson and Waddington received this money, as well as a bag of mail from the post office, and drove by automobile to the side entrance of the Pennsgrove National Bank on Oak street in the borough of Pennsgrove. Neither of the bank employes was armed. The automobile, having been parked, Waddington got out, took up the bag of mail and began walking to the bank entrance, when he was stopped by a man who placed a gun against his body and took the mail bag from him after striking him across the knuckles with the gun. Anderson, the other bank employe, had remained in the automobile and was making ready to carry the money, which was in the back of the car, into the bank, when, looking up, he saw the hold-up of Waddington. At this juncture, another individual, with a gun in his hand, stepped into the automobile with Anderson and took the money. Anderson identified the plaintiff in error as the man who held up Waddington.

From the testimony presented by the state, it appears that there were four men connected with this robbery and that two of them were in or near an automobile which they were using in the hold-up, and which was parked in front of the car that the bank messengers used. Another state witness identified the plaintiff in error as one of the group which committed the robbery but placed him in or near the automobile which the group used rather than as the individual who assaulted the bank messenger.

Indicted with the plaintiff in error was one Charles Kent, alias Carroll Johnson, who, although not identified by any witness that appeared in the case, nevertheless pleaded guilty. The court directed a severance in his case and the plaintiff in error, John Fodale, alias John Farley, was tried alone.

As to the first point that it was error for the court to reject motion to acquit at the end of the state's case, it is argued that the testimony of the state's witness, Anderson, the bank messenger who remained in the car, was that the plaintiff in

error was the man who robbed Waddington of the mail bag and therefore he was guiltless of the robbery of the money. This argument has no substance whatever. There was evidence that the plaintiff in error took the bags of currency from the bank's automobile and carried it to the car of the group in question.

Taking counsel's argument in its most favorable light, namely, that according to the testimony of Anderson, Fodale held up the bank messenger, Waddington, and robbed him of the mail bag; of the witness Morrow, that plaintiff in error was in the car used by the robbers to later effect their escape, while the actual robbery was being done; or the witness Childs, who identified Fodale as the man who actually robbed Anderson of the money and carried it to the other car, it was clearly for the jury to find from the evidence presented by the state, if the jury believed that testimony, as apparently it did, that the plaintiff in error was an actor in the commission of the crime.

It is next argued that the court should have directed an acquittal at the end of the entire case. Here counsel argues that Kent admitted the robbery and testified that Fodale was in no way connected with it; that Fodale testified he was not implicated in the robbery but that in fact he was in his boarding house in Camden, asleep, at the time, and that therefore as a matter of law a reasonable doubt existed and the defendant should have been acquitted by a direction of the court. This argument completely disregards the positive identification of Fodale as an actual participant in the crime. Add to this the fact that the jury may not have believed Kent's story. It had the right to reject it as apparently it did. The witness was admittedly a twice-convicted criminal and it is not strange that his testimony was not favorably received by the jury. After all, the selection and rejection of testimony as to its credibility is primarily the function of the jury and on the stand Kent answered what questions he pleased and refused to answer those that didn't suit him, his motive clearly being to exculpate Fodale by saying that he was not implicated in and had nothing whatever to do with the rob-

bery, regardless of the fact that Kent and some other unnamed man came to the room in the boarding house occupied by Fodale, during the night, and there divided the money. At the time of the arrest of plaintiff in error and Kent, a sum in excess of $36,000 in cash was found in their possession. Kent of course said the suitcase containing the money was his, but all this was for the jury.

The third ground argued is that there was manifest error and injury in the entire proceeding. Counsel for plaintiff in error starts argument on this point by stating, "This takes in everything." He proceeds, "Note the dozens of leading questions which were asked by the prosecutor." None of them is pointed out by stating them in the brief in question and answer form and by reference to book and page. One question is pointed out as leading but the record shows no objection. It is also argued that a mistrial was asked for and refused because state troopers were posted around the court house, with machine guns, &c. There is nothing in the record to show that that was so and the court denied the motion on the ground that the facts stated, in urging the motion, were not true.

It is further urged that plaintiff in error suffered wrong and injury in that the court rejected certain requests to charge. It is not indicated in the brief which were refused. No definite argument is made on the point and we therefore must needs consider the point as abandoned.

Judgment of conviction is affirmed.